FILED by RB   D.C.

ELECTRONIC

**Nov. 24, 2009**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
### WEST PALM BEACH DIVISION

### CASE NO.

### 09-82347-CiV-Ryskamp/Vitunac

JP MORGAN CHASE BANK, N.A.,

      Plaintiff,

v.

FIRST PRIORITY TITLE COMPANY
and **ATTORNEYS' TITLE INSURANCE
FUND, INC.**,

      Defendants.

_____/

## COMPLAINT

JPMorgan Chase Bank, N.A. (**Chase**) sues First Priority Title Company (**First Priority**)

and Attorneys' Title Insurance Fund, Inc. (the **Fund**), stating:

### GENERAL ALLEGATIONS

### — OVERVIEW —

1.    William Muller, a/k/a Willem Muller (**Muller**), purchased a single family home in the

Versailles development in Wellington, Florida, using Chase's mortgage loan proceeds.

Chase funded over $1.8 million for Muller's purchase.

2.    The Versailles division was infected by mortgage broker fraud.  The brokers disguised

kickbacks to the borrowers as legitimate fees.

3.    There is no doubt the brokers for Muller's transaction committed fraud.  They have

already pled guilty to conspiring to commit bank and mail fraud.

4.    The brokers' scheme could not have been successful without First Priority's complicity.

{JA491595;4}

5.   Chase contracted with First Priority to close Muller's purchase.  Chase issued explicit closing instructions setting forth First Priority's duties for the closing.

6.   Instead of disbursing Chase's loan proceeds in accordance with the HUD-1 Settlement Statement (**HUD-1**) that it prepared and sent to Chase for approval, First Priority breached the closing instructions by disguising Muller's kickback and concealing a disbursement to another scheme participant.

7.   First Priority's material breaches directly induced Chase to fund Muller's loans.

8.   Chase ultimately had to sue to foreclose the collateral.  Due to First Priority's duty breaches, the first and second mortgage are severely under-secured.  Chase will only be able to recover a fraction of the loan debt through the foreclosure.

9.   Chase attempted to seek reimbursement of the actual losses it suffered from First Priority's breaches under the closing protection letter (**CPL**) the Fund issued for Muller's transaction.  The Fund denied Chase's claim and refused to perform under the CPL.

10.   Chase brings claims in contract against First Priority and the Fund for damages, including the unpaid balances of the mortgage loans and the continued accrual of interest, fees and other compensable losses.

## — PARTIES —

11.   Chase is a national bank with its principal office located in Ohio.

12.   First Priority is a Florida corporation with its principal office located at 1325 South Congress Avenue, Suite 104, Boynton Beach, Florida 33426.[1]

13.   The Fund is a Florida corporation with its principal office located at 6545 Corporate Center Boulevard, Orlando, Florida 32822.

---

[1] First Priority's principals operate from 9033 Glades Road, Suite D, Boca Raton, Florida 33434.

{JA491595;4}

— JURISDICTION AND VENUE —

14. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because this controversy is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs. Complete diversity exists between Chase and all defendants.

15. Venue is proper in the Southern District of Florida under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred in this district and the property that is the subject of the action is situated in this district.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

— FINANCING THE PURCHASE —

16. Muller purchased his property located at 10581 Versailles Boulevard, Wellington, Florida 33467 from the sellers, Richard and Norma Ragone. The purchase price listed on Muller's contract was $1,900,000.

17. First Priority closed Muller's transaction on April 23, 2007, at its office located at 9033 Glades Road, Suite D, Boca Raton, Florida 33434.

18. Chase funded the Muller purchase through a $1,330,000 first mortgage loan and a $475,000 second mortgage loan.

— CHASE'S CLOSING INSTRUCTIONS —

19. By conducting the closing, First Priority agreed to contractual and fiduciary duties for Chase's benefit. These duties are contained in the closing instructions Chase issued to First Priority to close Muller's purchase transaction. Chase's closing instructions are attached as EXHIBIT A

{JA491595;4}

3

20. Chase's closing instructions mandated strict compliance. The instructions stated in part:

---

### CLOSING INSTRUCTIONS

YOU, AS THE SPECIFIED CLOSING AGENT ABOVE, ARE AUTHORIZED TO CLOSE THIS LOAN, AS A REPRESENTATIVE OF THE MORTGAGE LENDER, AT THE BORROWER'S/SELLER'S EXPENSE. THE LOAN IS TO BE CLOSED ONLY IF YOU ASSUME COMPLETE RESPONSIBILITY FOR FULLY COMPLYING WITH THESE INSTRUCTIONS . . .

       *     *     *

ANY DEVIATION FROM THE CONTENTS OF THESE INSTRUCTIONS MUST HAVE <u>WRITTEN</u> APPROVAL FROM CHASE PRIOR TO PROCEEDING WITH THE CLOSING.

---

21. First Priority accepted the closing instructions, including all terms and fiduciary duties, by closing the transaction and taking fees for closing the transaction.

### — THE CLOSING INSTRUCTIONS' HUD-1 REQUIREMENTS —

22. Chase's closing instructions required First Priority to prepare a HUD-1 for Muller's purchase transaction.

23. The accuracy of the HUD-1 was critical. The HUD-1 served as a blueprint for Muller's transaction, which Chase relied on to fund his purchase.

24. Chase's closing instructions for Muller's purchase highlighted the importance of the HUD-1 correctly itemizing all disbursements:

---

<u>GENERAL SETTLEMENT INSTRUCTIONS/PROCEDURES:</u>

15. The HUD-1/HUD1A Settlement Statement must be prepared according to RESPA and HUD Regulation X requirement[s]. All fee payees must be disclosed. All items paid outside of closing must be disclosed and labeled "POC".

---

## — FIRST PRIORITY'S BREACHES OF DUTY —

25. Lauren Jasky and Ralph Michel served as the mortgage brokers for Muller's transaction. These brokers directed First Priority to funnel Chase's funds to a scheme participant, while ensuring Muller would pay nothing for his purchase.

26. There is no doubt Jasky and Michel designed a fraud scheme. Both brokers pled guilty to conspiring to commit bank and mail fraud under 18 U.S.C. § 1349 for defrauding Chase and other lenders. Michel additionally pled guilty to a count of money laundering under 18 U.S.C. § 1957. The court imposed prison sentences of thirty-six months for Jasky and thirty months for Michel.

27. Under the scheme's design, First Priority prepared a false HUD-1 for Muller's transaction, which it submitted to Chase for approval.

28. First Priority represented on the HUD-1 that Muller would pay $133,184.34 to close the transaction. This was false. Muller did not pay any money to close.

29. First Priority also stated on the HUD-1 that Michel would receive a $650,000 marketing fee. B & R Castlee Property Management, LLC (**B&R**) got Chase's money instead.

30. Both of these misrepresentations constituted material breaches of the closing instructions Chase issued to First Priority.

31. Although First Priority knew at the time it closed Muller's purchase that the HUD-1 it prepared and delivered to Chase did not disclose the kickback to Muller or the unauthorized payment to B&R, First Priority proceeded with the closing and disbursed Chase's loan proceeds.

{JA491595;4}

32. First Priority intended for Chase to rely on the false HUD-1 to fund the transaction. First Priority not only received fees from the closing, but it was also ensured continuous business from Jasky and Michel.

33. Chase had no knowledge of the kickback or the payment to B&R because First Priority did not report them on the HUD-1 or otherwise. Had Chase known about them, it would have never funded this purchase transaction.

34. First Priority's failure to ensure Muller paid his down payment directly caused the artificial inflation of the property's value, resulting in Chase unknowingly funding two severely under-secured loans.

35. Due to the extreme under-security, Chase will only recover a fraction of the loan debt by liquidating the collateral through foreclosure.

— The Title Insurer —

36. The Fund provided a CPL letter to Chase and its successors and/or assigns on Muller's transaction, which constituted a valid contract.

37. The Fund's CPL required the title insurer to reimburse Chase's actual losses. The CPL states in pertinent part as follows:

{JA491595;4}

6

> Attorneys' Title Insurance Fund, Inc. ... hereby agrees to reimburse [Chase] for actual loss incurred by [Chase] in connection with such closing . . . when such loss arises out of:
>
> A.     Failure of said Issuing Agent or Approved Attorney to comply with your written closing instructions to the extent that they relate to (a) the status of the title to said interest in land or the validity, enforceability and priority of the lien of said mortgage on said interest in land . . . or (b) the obtaining of any other document, specifically required by you, but not to the extent that said instructions require a determination of the validity, enforceability or effectiveness of such other document, or (c) the collection and payment of funds due you, or
>
> B.     Fraud or dishonesty of said Issuing Agent or Approved Attorney in handling your funds or documents in connection with such closing.

38.   Chase has a right to reimbursement of actual losses for all of the reasons stated in this complaint which trigger coverage under the CPL.

39.   First Priority, as the Fund's approved agent, failed to comply with Chase's written closing instructions, including:  (i) failing to disclose all disbursements on the HUD-1 Chase approved; (ii) misrepresenting Muller paid cash to close his purchase; (iii) disguising a kickback to Muller as a disbursement to another transaction participant; and (iv) misrepresenting a payment to a scheme participant as a marketing fee.  Further, First Priority, as the Fund's approved agent, committed fraud or dishonesty in handling Chase's funds and documents in connection with the closings.

40.   The Fund breached the CPL by not reimbursing Chase for the actual losses incurred.

41.   Chase gave timely notice to the Fund of the damages and losses First Priority caused on the Muller loans.  The Fund responded to Chase's notice by denying Chase's claim and refusing to reimburse its actual loss.

{JA491595;4}

## CLAIMS FOR RELIEF

### COUNT I — BREACH OF CONTRACT
### (FIRST PRIORITY)

42.     Chase realleges paragraphs 1 – 41.

43.     First Priority entered into a valid contract with Chase in the form of the closing instructions to perform the closing of Muller's purchase transaction.

44.     First Priority materially breached this contract by failing to comply with the closing instructions by, among other violations: (i) disguising a kickback to Muller as a payment to another transaction participant; and (ii) concealing a disbursement to an undisclosed scheme participant.

45.     Chase suffered damages as a result of First Priority's contract breaches, including severely under-secured mortgage loans that will not be repaid by foreclosing the collateral.

*Wherefore*, Chase respectfully requests judgment awarding it damages, costs, attorney's fees, and such other relief this Court deems proper against First Priority.

### COUNT II — BREACH OF CONTRACT
### (THE FUND)

46.     Chase realleges paragraphs 1 – 41.

47.     The Fund entered into a valid contract with Chase and its successors and/or assigns under the CPL.

48.     The Fund committed material breaches of this contract by failing to comply with the terms of the CPL, including its failure to reimburse Chase for its actual loss.

49.     Chase suffered damages as a result of these contract breaches.

{JA491595;4}

8

*Wherefore*, Chase respectfully requests judgment awarding it damages, costs, attorney's fees, and such other relief this Court deems proper against the Fund.

Date:  November 23, 2009

15639 for

William P. Heller
Florida Bar Number:  987263
william.heller@akerman.com
**AKERMAN SENTERFITT**
350 East Las Olas Blvd., Suite 1600
Fort Lauderdale, FL 33301
Telephone:  954.759.8945
Facsimile:  954.463.2224

*Counsel for JPMorgan Chase Bank, N.A.*

{JA491595;4}

**Redacted**

 **JPMORGAN CHASE BANK, N.A.**
**CLOSING INSTRUCTIONS**

| | |
|---|---|
| LOAN NUMBER: ████ 5395 | DATE OF CLOSING: 04/23/07 |
| CLOSING AGENT: First Priority Title | LOAN MUST CLOSE BY: 04/23/07 |
| ADDRESS: 9033 Glades Rd #d | LOCK EXPIRATION DATE: 04/24/07 |
| Boca Raton, FL  33434 | FUNDING DATE: 04/23/07 |
| CONTACT: Tara | DATE ON LOAN DOCS: 04/19/07 |
| PHONE #: (561)-477-5968  Fax #:(561)-477-0817 | |
| TITLE UNDERWRITER: | Burdowns |
| BORROWER'S NAME(S): William J. Muller | First Years Amount: $ N/A |
| | |
| | HUD/VA/FHA CASE #: |
| TITLEHOLDER'S NAME(S): William J. Muller | PURPOSE: Purchase |
| | LOAN PROGRAM: 30 Yrs Fxd IO |
| | PROPERTY TYPE: PUD |
| PROPERTY ADDRESS: 10581 Versailles Blvd | |
| Wellington, FL  33487 | |
| MAILING ADDRESS: 10581 Versailles Blvd | |
| Wellington, FL  33487 | MONTHLY AMOUNT |
| SELLERS NAME(S): Richard Ragone, Norma Ragone | PRINCIPAL AND INTEREST: $6,728.13 |
| | HAZARD INSURANCE: |
| CLOSER: Shari Mae Miller | PROPERTY TAXES: |
| MORTGAGE AMOUNT: $1,330,000  SALES PRICE: $1,900,000 | FLOOD INSURANCE: |
| ORIGINATION FEE: 0.000  BASE MTG AMT: $1,330,000 | MONTHLY PMI/MIP: |
| DISCOUNT: 0.000  INTEREST RATE: 7.875 | OTHER: |
| VAMIP/FMIP:  TERM: 360 months | |
| NET DRAFT: $ 1354,238.10  DRAFT #: | TOTAL PAYMENT: $6,728.13 |

YOU, AS THE SPECIFIED CLOSING AGENT ABOVE, ARE AUTHORIZED TO CLOSE THIS LOAN, AS A REPRESENTATIVE OF THE MORTGAGE LENDER, AT THE BORROWER'S/SELLERS EXPENSE. THE LOAN IS TO BE CLOSED ONLY IF YOU ASSUME COMPLETE RESPONSIBILITY FOR FULLY COMPLYING WITH THESE INSTRUCTIONS AND THE TERMS OF THE COMMITMENT LETTER AND/OR LOAN APPROVAL AND ANY AMENDMENT TO THE COMMITMENT AND/OR LOAN APPROVAL (ATTACHED), AND ACCEPT FULL LIABILITY FOR FAILING TO DO SO. THE LOAN CLOSING MUST COMPLY WITH ALL APPLICABLE LAWS, STATE, FEDERAL AND LOCAL, INCLUDING BUT NOT LIMITED TO USURY, RESPA, AND REGULATION Z.  ANY DEVIATION FROM THE CONTENTS OF THESE INSTRUCTIONS MUST HAVE WRITTEN APPROVAL FROM CHASE PRIOR TO THE PROCEEDING WITH THE CLOSING.

PLEASE INDICATE WHICH PARTIES PAID ANY POC ITEMS AND TO WHOM THEY WERE PAID ON THE HUD-1:

WHERE YOU, AS SETTLEMENT AGENT, ARE CHARGING A SEPARATE FEE FOR THE PURPOSE OF ATTENDING THE CLOSING, FEDERAL LAW REQUIRES THAT THE FEE BE INCLUDED IN THE TRUTH IN LENDING DISCLOSURES AS A PREPAID FINANCE CHARGE. THE FEE YOU ARE COLLECTING IS NOTED ON THESE CLOSING INSTRUCTIONS AND MAY NOT BE CHANGED WITHOUT THE LENDER'S CONSENT.

CLOSING AGENT MUST CONTACT LENDER TO CONFIRM THE DISBURSEMENT OF FUNDS ON DESIGNATED DISBURSEMENT DATE. AS TO RESCINDABLE LOANS, CLOSING AGENT MUST CONTACT ALL CONSUMERS WITH RESCISSION RIGHTS TO VERIFY THAT THEY HAVE NOT RESCINDED PRIOR TO DISBURSEMENT.

WHERE A FIRST MORTGAGE LOAN IS CLOSING SIMULTANEOUSLY WITH A SUBORDINATE LIEN LOAN, THE LENDER REQUIRES THAT SEPARATE HUD-1/HUD-1A SETTLEMENT STATEMENTS BE COMPLETED FOR EACH TRANSACTION. EXCEPTIONS TO THIS REQUIREMENT ARE NOT PERMITTED.

SETTLEMENT AGENTS ARE PROHIBITED FROM CHARGING ANYONE FOR THE COST ASSOCIATED WITH PREPARING THE HUD-1/HUD-1A AS SUCH CHARGES ARE PROHIBITED BY THE FEDERAL REAL ESTATE SETTLEMENT PROCEDURES ACT. SETTLEMENT AGENTS WHO DO SO WILL BE REQUIRED TO REFUND THE AMOUNT COLLECTED AND PROVIDE THE LENDER WITH PROOF OF THE REFUND. FAILURE TO DO SO WILL RESULT IN THE SETTLEMENT AGENT'S NO LONGER BEING PERMITTED TO CLOSE LOANS FOR THE LENDER.

A SETTLEMENT AGENT'S FAILURE TO COMPLY WITH THESE CLOSING INSTRUCTIONS MAY RESULT IN A CLAIM BY THE LENDER AGAINST THE TITLE INSURANCE COMPANY THAT ISSUES THE INSURED CLOSING LETTER OR INDEMNIFICATION LETTER THE LENDER HAS ON FILE.

Closing Instructions 01251 (1/04) (replaces 9/99)   Page 1 of 6

**Exhibit A**

**Redacted**

5396

| Fees | Borrower B/Seller L/ender Third Party | | Total Charged | | Amount Previously Paid (POC) | | Amount Due At Closing | Payee |
|------|------|---|---|---|---|---|---|-------|
| Credit Report Fee | B | $ | 10.33 | $ | 0.00 | $ | 10.33 | CBA C/O COMPASS MTG |
| Tax Related Service Fee | B | $ | 84.00 | $ | 0.00 | $ | 84.00 | 1ST AMERICAN TAX SERVICE |
| Yield Spread Premium to Mortgage Broker | L | $ | 0.00 | $ | 27,291.79 | $ | 0.00 | FR-JPMCBNA TO COMPASS MTG |
| Flood Determination - Initial | B | $ | 9.00 | $ | 0.00 | $ | 9.00 | 1ST AMERICAN FLOOD SERVIC |
| Flood Certification - Life of Loan | B | $ | 5.00 | $ | 0.00 | $ | 5.00 | 1ST AMERICAN FLOOD SERVIC |
| Processing Fee to Broker | B | $ | 690.00 | $ | 0.00 | $ | 690.00 | COMPASS MTG |
| Administration Fee to Chase | B | $ | 620.00 | $ | 0.00 | $ | 620.00 | JPMCBNA |
| Shipping Fee | B | $ | 50.00 | $ | 0.00 | $ | 50.00 | SHIPPING-FIRST PRIORITY |
| Wiring Fee | B | $ | 20.00 | $ | 0.00 | $ | 20.00 | INCOMING-FIRST PRIORITY |
| Miscellaneous Fee _____ | B | $ | 13,300.00 | $ | 0.00 | $ | 13,300.00 | ORIG FEE-COMPASS MTG |
| Interim Interest | B | $ | 2,295.60 | $ | 0.00 | $ | 2,295.60 | JPMCBNA |
| Hazard Insurance Premium | B | $ | 10,292.00 | $ | 0.00 | $ | 10,292.00 | CITIZENS |
| Settlement or Closing Fee | B | $ | 350.00 | $ | 0.00 | $ | 350.00 | First Priority Title |

0901 . Interim Interest 8 Days @ $286.95 per day                                      $ 2,295.60

1099 . Aggregate Adjustment                                      $    0.00

**Total Required Reserves : $0.00**

The Total Required Reserves have been netted from Chase's funding remittance (check or wire).

(For Chase Auditing Purposes Only)

| Total Reserves | Target Balance | Aggregate Adjustment |
|----------------|----------------|----------------------|
| $0.00 | $0.00 | $0.00 |

ALL PAYEES MUST BE SHOWN AS ABOVE ON THE HUD-1 & HUD-1A.

**Redacted**

████5306  ●                    ●

CHASE HAS VERIFIED A DOWNPAYMENT OF $N/A____ AND A SALES PRICE OF $1,800,000. ANY VARIANCE IN THIS FIGURE OR ANY OTHER CREDITS SHOWN ON THE HUD-1, LINES 201-209, UNLESS OTHERWISE NOTED, MUST HAVE WRITTEN APPROVAL BY JPMORGAN CHASE BANK, N.A. PRIOR TO CLOSING THE LOAN. IF YOU, AS CLOSING AGENT, HAVE ACTUAL KNOWLEDGE THAT THE SOURCE OF FUNDS IS OTHER THAN AS DESCRIBED IN THE CLOSING INSTRUCTIONS, LOAN PROCEEDS MAY NOT BE DISBURSED AND THE MORTGAGE LENDER MUST BE CONTACTED FOR FURTHER INSTRUCTIONS.

PRIVATE MORTGAGE INSURANCE, MIP OR VA FUNDING FEE: Initial premium  is $_____. THIS AMOUNT HAS BEEN DEDUCTED FROM YOUR FUNDS; DO NOT CUT A CHECK FOR THIS FEE. The full amount of the premium should be shown on the HUD-1: the Payee is

LATE CHARGE: 5.000_ % of the total payment  after 15 days.

Per Diem Interest  is at $ 288.96 per day; Collect interest  including day of funding through last day of the month.  Interest  is calculated  on a 365 day year.

**SPECIAL CLOSING CONDITIONS:**

●     Any conditions of the Commitment Letter and/or Loan Approval or any Amendment to Commitment.

●     Borrower must pay a minimum closing cost of $_____. If not paid, DO NOT CLOSE THIS LOAN; contact the mortgage lender immediately.

●     Cash back to Borrower MAY NOT EXCEED $ _____

●     _____

●     _____

●     _____

●     _____

●     _____

●     _____

●     _____

●     _____

●     _____

●     _____

**FHA FINANCING:**

The borrowers in this FHA-insured transaction must, from their own funds, make the required earnest money deposit, pay closing costs and make the required downpayment required by FHA, unless otherwise explained within the Loan Closing Instructions. In order to assist in assuring that the borrowers in this transaction have met their financial obligations, you are to have executed the certifications contained on the form enclosed herewith by both the borrower and the seller. You are also to execute and date the certification as indicated. Your executed certification notes receipt of the other certifications. You should make these certifications and addendum to the HUD-1 Settlement Statement and provide copies to all parties receiving copies of such statement. If you have actual knowledge that the source of funds is other than from the borrower (except as described within the instructions), you are not to disburse any loan proceeds and must immediately notify the mortgage lender (see local contact). You may only proceed with the closing upon receipt of written instructions from the mortgage lender.

**POST DISBURSEMENT SHIPPING INSTRUCTIONS**

DOCUMENTS ENCLOSED TO BE EXECUTED AND RETURNED ACCORDING TO THE ATTACHED "SHIPPING INSTRUCTIONS"

CONTACT:

                     JPMorgan Chase Bank, N.A.
                         Closing Department
                        4819 Memorial Highway
                            Suite 308
                          Tampa, FL 33634
                        1-(813)-881-8000

Closing Instructions 01023 (3/04) (replaces 9/99)    Page 3 of 6

**Redacted**

■■■6396                ●                          ●

<u>GENERAL SETTLEMENT INSTRUCTIONS/PROCEDURES:</u>

1. Loans may not be closed and funds disbursed until Chase is in receipt of an indemnification letter from the title underwriter insuring Chase.

2. With respect to this loan, the Closing Agent represents the interests of Chase and is required to:

    a. Fill in all blank spaces on any loan instrument/document prior to requesting the signatures of the mortgagor(s).

    b. Review all loan instruments/documents for accuracy and completeness. In escrow states this information will be completed prior to your receipt of loan documents.

    c. Explain any loan instrument/document not understood by the mortgagor(s).

    d. Obtain the correct signature(s) of the mortgagor(s) as required on all documentation (including non-borrower owners or non-borrower spouses with dower, curtesy, homestead or community property interests, if required by state law).

    e. Insure that all notary information has been completed with a seal and expiration date. The completed notary information must also appear on all copies.

    f. Supply the borrower(s)/titleholder(s) with completed copies of all loan documentation due them.

    g. Explain the necessity of making the payments as required and notify them of the date of the first payment.

    h. Explain to the mortgagor(s) the purpose of the Mortgagee Title Insurance Policy and acquaint them with the availability of Owner's Title Insurance. CHANGES TO CLOSING DOCUMENTS ARE NOT PERMITTED UNLESS EXPRESSLY APPROVED IN WRITING BY CHASE.

3. The mortgagee must read as JPMorgan Chase Bank, N.A. on all legal documents, unless loan closing in broker's name.

4. SURVEY: The final title policy is to be issued without a survey exception.

    If the loan is for a condominium unit, the final title policy is to insure, without exception, the survey certificate which states that the unit is located substantially within the boundaries as set forth in the Master Deed and further insuring that the unit does not encroach on any other Unit or any of the common elements, areas or facilities in the Condo. The policy must also insure that there is no encroachment on the unit by another unit or by any of the common elements, areas or facilities. Unless not required in the state in which the property is located.

5. CERTIFICATE OF OCCUPANCY:   A certificate of occupancy and/or completion certificates must cover the structure and all additions on the dwelling. No building violations of record or open building permits for incomplete work or completed work not yet inspected are permitted.

6. HAZARD INSURANCE:  Collect the original policy from the borrower(s).  The policy must be in effect as of settlement, with coverage equal to the lesser of the mortgage amount or the replacement value of the dwelling (appraised amount minus site value), or <u>80%</u> of the dwelling amount (appraised value minus site value) with the statement "100% replacement guaranteed".  The loss payee should read Chase Home Finance, LLC, its successors and/or Assigns as their interest may appear, P.O.Box 47020, Doraville, GA 30362. The first year's premium is to be paid prior to closing and a paid receipt must be attached to the original policy. Insurance must be placed with a company having a rating of at least "B" for (Best's rating) or a "6" (Best's Financial Performance Rating), or better. <u>BINDERS ARE NOT ACCEPTABLE AS PROOF OF INSURANCE EXCEPT WHERE REQUIRED BY STATE LAW.</u> If the loan is for a condominium unit, a certified copy of the Master Policy and original unit certificate is required.  <u>PLEASE SHOW THE FIRST YEAR'S HAZARD PREMIUM AS A POC ITEM ON THE HUD-1.</u> "For Refinances, evidence of insurance must reflect at least 90 days remaining on the policy. The maximum allowable deductible is the higher of $1,000 or 1% of the policy face amount."

7. FLOOD INSURANCE:  If any portion of the dwelling is in a special flood zone, a flood insurance policy (or an application for a policy) paid for by the Borrower(s) is required. Flood insurance should generally be in the form of the standard policy issued by members of the National Flood Insurers Association.  A copy of the paid receipt for at least one year's premium must be attached. Chase Home Finance, LLC, its Successors and/or Assigns must be named as mortgage in the manner specified above for hazard insurance. The policy must be in effect at settlement, with coverage equal to the lesser of the mortgage amount <u>or</u> the overall value of the property minus the value of the land, subject to a maximum limitation of $250,000 in most cases (which is the maximum coverage available through the National Flood Insurance Program).

8. TERMITE INSPECTION:  A clear termite inspection report <u>must</u> be provided on all closings where required on the Commitment Letter and/or Loan Approval.  On all property that is less than a year old, use form FHA 92052/VA 26-5375. On homes older than one year, use form FHA 92053/VA 26-5360. The report must always be signed and accepted by borrower. The report may not be more than 90 days old at time of closing(unless otherwise noted). The report must evidence that the property is clear of active infestation; there should be no damage resulting from previous infestation. If damage is revealed, a licensed inspector must determine if the damage is cosmetic or structural. CONTACT CHASE IMMEDIATELY IF EVIDENCE OF INFESTATION OR DAMAGE IS FOUND. For all FHA & VA loans the Termite Report can be no older than six months.

9. ESCROW DEPOSITS:  Escrow reserves for taxes and insurance are to be collected in accordance with the instructions on Page 1. UNPAID REAL ESTATE TAXES, WATER, SEWER AND GROUND RENTS DUE WITHIN 60 DAYS OF CLOSING <u>MUST</u> BE PAID AT CLOSING. IT IS THE RESPONSIBILITY OF THE CLOSING AGENT TO ASSURE PAYMENT. TAXES CURRENTLY DUE AND PAYABLE MUST BE PAID PRIOR TO CLOSING. PROOF OF SUCH PAYMENT (COPY OF TAX RECEIPT OR CANCELLED CHECK) MUST BE PROVIDED <u>PRIOR TO CLOSING.</u>

**Redacted**

5396

10.  **POWER'S OF ATTORNEY:** If Power of Attorney is used, it must reflect a complete legal description and property address, specific to the transaction. Identify loan documents to be executed and have an expiration date. The POA **must** be approved by Chase prior to loan closing and/or funding. We do NOT accept General, Durable POA's, or Statutory POA's, unless state law requires that we do so. VA's require additional information, please contact your closer immediately.

11.  **MORTGAGE TITLE INSURANCE POLICY:** The title insurance policy on standard ALTA form, unless otherwise agreed to by Chase, written in an amount equal to the loan balance must show our mortgage to be a valid first lien against the property, and must show no secondary financing unless expressly prior approved in writing by Chase. The insured must read as follows:

**CONVENTIONAL LOANS:**

JPMorgan Chase Bank, N.A., its successors and/or assigns as their interest may appear.

**FHA:**

JPMorgan Chase Bank, N.A., and/or Secretary of Housing and Urban Development, its successors and assigns as their interest may appear.

**VA:**

JPMorgan Chase Bank, N.A., and/or Administrator of Veterans Affairs, its successors and assigns as their interest may appear.

WE REQUIRE AFFIRMATIVE TITLE INSURANCE COVERAGE ON ALL RESTRICTIONS, COVENANTS, DECLARATIONS, VIOLATIONS OF SETBACK LINES, ENCROACHMENTS, EASEMENTS, MINERAL RESERVATIONS, ETC. In the event of a violation or future violation, we shall require insurance for any loss or damage which may be occasioned by reason of the violation (i.e.: reverter or forfeiture of title). All tax liens or other liens on the property and all title exceptions not acceptable by Chase must be omitted from the policy. The policy must contain the following endorsements:

_____ ALTA 4 Condominium or 115.2          _____ ALTA 103.1 Unlocated Easements
_____ ALTA 6/6.1 Adjustable Rate or 111.5   _____ ALTA 100.12/100.18 Mortgages
  X   ALTA 100 & 115 or equivalent (Affirmative language)   _____ Protection Clause; CC & R's
  X   ALTA 5 PUD
  X   ALTA 8.1 Environmental Protection
_____ ALTA Comprehensive
Preliminary Title Report Dated: _____

_____ Items accepted: _____

_____

_____ Items to be removed: _____

_____

_____ Please pay _____ half and _____ half of _____ taxes in escrow or provide evidence of payment.

12.  You must provide the borrower(s) with any amortization schedule included in our closing package.

13.  The loan number must appear on all documents.

14.  Complete the Tax Information Form in its entirety, sign and return in the closed loan package.

15.  The HUD-1/HUD1A Settlement Statement must be completed according to RESPA and HUD Regulation X requirement. All fee payees must be disclosed. All items paid outside of closing must be disclosed and labeled "POC". Two certified copies required.

16.  Please add the seller(s) to any and all applicable documents (including their name and address on the HUD-1).

17.  Date any undated documents the date of the closing. If you are unclear, please contact Chase.

18.  Please add the legal description to the security instrument.

19.  Ensure that the legal description appearing on the deed, the security instrument and the title policy are exactly the same.

20.  _____ This is a refinance transaction and funds must disburse no earlier than _____.

21.  Documents must reflect ALL borrowers' and titleholder's names as shown on the first page of the instructions and the enclosed security instruments. Borrower(s) and titleholder(s) must sign their names as typed, i.e., middle initial, suffixes, etc. IT IS YOUR RESPONSIBILITY TO ENSURE THAT THE BORROWER(S) AND TITLEHOLDER(S) SIGN APPROPRIATELY.

22.  Proof of Identity. Proof of each borrower's/titleholder's identity must be provided on all closings. Proof must be either one photo identification (i.e., photo driver's license) or two alternate forms of proof of identification (i.e., social security card, major credit card).

23.  YOU MAY NOT DISBURSE ANY FUNDS ON THIS LOAN PRIOR TO CALLING CHASE FOR AUTHORIZATION TO DISBURSE.

Closing Instructions 01057 (1/00) (replaces 5/99)   Page 3 of 6

5396

24. Prepare and file Form 1099-S with the IRS, if applicable.
25. If applicable, record concurrently the Assignment of Deed of Trust. If you fail to record, you must provide a 104.1 endorsement at your expense at no cost to Chase.
26. **Holdbacks:** Holdbacks must be approved by the underwriter, and at the Regional or National Level based on funds required to be held. **Beware, holdbacks are not routinely approved.** Funds required to be held are at one and half times the estimate presented by the contractor(s). Funds are held in Chase Corporate accounts, not escrow. A holdback request at the time of funding will delay funding. No exceptions.

**TRANSMITTAL OF DOCUMENTS/CLOSED LOAN PACKAGE:**

PLEASE REFER TO "SHIPPING INSTRUCTIONS" AS ATTACHED.

**Plus** include any other documentation required under the Special Conditions or Documentation sections of these instructions or any documentation that would add significantly to the understanding of the closing as well as the package attached to these instructions.

The closed loan documents must be sent by overnight courier to reach the following address within 24 hours of closing (Escrow States), or Disbursement (Non-Escrow States) unless otherwise instructed by an attached addendum to these closing instructions.

JPMorgan Chase Bank, N.A.
Closing Department
4819 Memorial Highway
Tampa, FL 33634

The original final title insurance policy and recorded mortgage **must** be forwarded to JPMorgan Chase Custody Services, P.O. Box 8000, Monroe, LA 71211.

**INSTRUCTIONS PREPARED BY:**

_Sheri Mae Miller_ _____          _____
                                                                                      Date

_____          _____
Review Signature                                          Date

**ACKNOWLEDGEMENT AND RECEIPT**

Closing Agent hereby acknowledges receipt of the loan closing instructions for this transaction and agrees to abide by and fulfill all conditions and requirements contained therein.

_____          _____          _____
Closing Agent Name                          Signature                          Date

Case 9:09-cv-82347-KLR Document 1 Entered on FLSD Docket 11/24/2009 Page 16 of 16

**JS 44** (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

FILED by __ D.C.

ELECTRONIC

Nov. 24, 2009

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## I. (a) PLAINTIFFS
JP Morgan Chase Bank, N.A.

**DEFENDANTS**
First Priority Title Company and Attorneys Title Insurance Fund, Inc.

**(b)** County of Residence of First Listed Plaintiff **Delaware, OH**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant **Palm Beach, FL**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
William P. Heller, Akerman Senterfitt, 350 East Las Olas Blvd., Suite 1600, Fort Lauderdale, FL 33301

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

09CV82347 KLR/AEV

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. § 1332(a)(1)

Brief description of cause:
Breach of Closing Instruction and Closing Protection Letter Contracts

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $** 75,001.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):

JUDGE _____ DOCKET NUMBER _____

DATE 11/23/2009

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT 350 APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

726628